Bronson, J.
By the act of April 6, 1808, (Private Laws of 1808, f. 170,) John Drake, jun. and Samuel Bogardus *51 were authorized to erect a bridge, at their own expense, across the mouth of Wappinger’s creek, in the county of Dutchess. The bridge was to be finished by the first of June, 1809; and the third section of the act declared, that the bridge, when completed, should be a public bridge, and should be under the control and direction of the supervisor's of the county. But it was provided by the fifth section, that it should not become a public bridge, until the court of common pleas of the county should agree to receive it as such. The bridge was built in pursuance of the act, and on the 27th June, 1826, the court of common pleas, by a rule entered in open court, agreed to receive the same as a public bridge.
Wappinger’s creek, over which the bridge was built, is the boundary between the towns of Poughkeepsie and Fishkill. (3 R. S. 25, 26.) At an adjourned meeting of the board of supérvisors of Dutchess, held- on the 13th December, 1839, the commissioners of highways of' the towns of Fishkill and Poughkeepsie, applied to the board to take the charge and control of the bridge, (which is commonly called Drake's bridge,) and cause the same to be repaired and maintained at the expense of the county. " The board thereupon passed two resolutions : first, that the sum of $200 be raised for the repair and support of the bridge; and second, that the money be raised by, and apportioned between the towns of Fishkill and Poughkeepsie. The relators thereupon obtained an alternative mandamus, calling on the board of supervisors to vacate the second resolution, which required the money to be raised by the two towns, and directing the board to cause the said sum of $200 for the repair and support of the bridge, to be raised by and apportioned among all the towns of the county as a county charge. *
At the annual meeting of the board in November, 1839, preceding the adjourned meeting at which the. foregoing resolutions were adopted, the board had resolved to raise $1000 on the county, for the relief of such towns as were unreasonably burthened with bridges; and had resolved to divide the same among eleven of the towns of the county, *52 of which the towns of Fishkill and Poughkeepsie were two. (>3ee 1 R. S. 524, § 119,120.) They had also directed the sum of $250 to be levied upon each of those towns for roads and bridges, pursuant to 1 R. ¡3. 502, § 4.
The first inquiry is, how much was intended by the provision that the bridge, after it should become public, should be under the control and direction of the supervisors of the county ? It seems from the preamble and other parts of the statute, that there had before been a bridge at the same place, which had recently been carried away; that Drake owned the land on both sides of the creek; and that the act was passed to authorize him and Bogardus to build another bridge, making it more secure against ice and floods, by sinking a “ block” or' pier in the creek. The bridge was to be constructed with a draw, so as not to interrupt the navigation of the creek with masted vessels. It was to be an “ open highway,” and to be “ freely used without toll or reward.” Drake and Bogardus were at all times, for eight years after the bridge should be completed, to keep persons to attend and open the draw, during the season of fiavigation, for the passage of vessels; and the bridge was not to become public, until Drake and Bogardus should cause the road, leading from the bridge to the public ferry across the Hudson river, near Drake’s store, to be laid out and recorded as a public highway, without any expense to the town or towns through which it passed. It would seem that both the road and bridge were at that time private property, Avhich Drake and. his associate had found it for their interest to open and construct; that they were willing to rebuild the bridge in a more substantial and useful manner, and to incur the expense of having the road laid out and established according to lavv, an^ to take upon themselves the burden of attending the draw eight years, in the expectation that the road and bridge Avould afterwards become public property.
In providing that this should, in a certain event, become public, instead of private property, the legislature went, I think, beyond relieving Drake and Bogardus from the burden *53 which would otherwise have rested on them, and transferred it to the county. Had. the act stopped with declaring that this should become a “public bridge,” the case would have been left to the operation of the general law then in force, and the support of the bridge would probably have fallen upon the towns of Fishkill and Poughkeepsie; unless the . supervisors had consented to render them some aid. (1 Web. 588, § 1, and p. 599, § 26.) But after declaring how and on what terms it should become a public bridge, the statute further provides, that thereafter, the bridge “ shall be under the control and direction of the supervisors of the said county of Dutchess.” Although more apt words might have been used for that purpose, I am unable to understand this language as meaning less than that the bridge should be repaired and maintained by the county. I cannot see why the “ control and direction” of the bridge " should be given to the supervisors of the county, if it was intended that this, like other bridges, should be repaired and upheld by the towns.
If the repair of the bridge was a legal charge upon the county, it follows, of course, that the board erred in the second resolution, which directed the sum of $200 for the repair of the bridge, to be raised by, and. apportioned between, the towns of Fishkill and Poughkeepsie.
The supervisors say, they had no power to raise money for the repair of this bridge—especially after they had directed the raising and distribution of the $1000, provided for by 1 R. S. 524, % 119, 120. In that, I think, they are mistaken. The statute to which they refer is not the one which governs this question. That relates to bridges which are a charge upon the towns. This bridge is a charge on the county; and the supervisors have ample power to-raise money to defray all county charges. (1 R. R. 386, § 5.) If there could be any doubt upon this statute, the case is. provided for by the act of 1838,. “ to enlarge the powers of boards of supervisors.” (Statutes of 1838, p. 314.) By the first section, the board has power, among other things, “to cause to be levied, collected and *54 paid to the treasurer of the county, such sum of money as may he necessary to construct and repair bridges therein; and to prescribe upon what plan, and in what manner, the moneys so to be raised shall be expended.” The provision contained in the third section, that persons intending to apply for the imposing of a tax pursuant to the first section, shall give notice, &c., cannot restrain the board of supervisors from acting on their own motion, in raising money for the necessary repair of a bridge which is a charge on the county.
The relators are right, so far as they complain of the resolution which makes the $200, directed to be raised, a charge on the towns which .they represent. The charge should have been on the county. But there is also another reason why the defendants are wrong. If the two towns had beep liable for the repair of the bridge, the board of supervisors had no control over the matter, except on the application of the supervisors of the two towns. (1 R. S, 592, § 4.) The relators did not apply for a tax on their towns, but for a tax on the county. And besides, the tax authorized by the statute just referred to, had been ordered at the annual meeting in November preceding the time of passing the two resolutions. The board had no authority under the act of 1838, because there had been no such vote of the towns as that act requires. (Statutes of 1838, p. 314, § 1, sub. 5.)
Although right in this, the relators are wrong in the other branch of their case. They attempt to separate the first and second resolutions passed by the supervisors; and they treat the former as though it were a resolve to raise $200 on the county, for the repair of the bridge. Although there were two resolutions, only one measure was agreed ’ on by the 'board, and that was to raise $200 on the two towns. By treating the resolutions as independent propositions, the board is made to speak a language directly the reverse of its intention. The alternative writ does not call on the board, in general terms, to cause the bridge to be repaired as a county charge; but, in effect, it requires the board to *55 execute the first resolution, and raise the particular sum of money mentioned in it. This the relators had no right to ask. The command of this part of the writ should not have gone beyond putting the defendants in motion. After requiring them to repair, as a county charge, it should have been left to them to determine how much money should be raised for that purpose.
As the writ demands too much, I think there should be judgment for the defendants. We cannot very well separate, and give judgment for the relators as to a part of the requirement of the writ, and for the defendants as to the residue. As to the thing required to be done, the peremptory writ, when awarded, should follow the alternative mandamus. I do not think it important to inquire whether there are any exceptions to this rule. The parties on both sides are public officers, who undoubtedly intend to do their duty. They have come here not so much for victory, as to settle an honest difference of opinion as to where the burden lies of repairing this bridge. On learning our opinion, it may be presumed that the board of supervisors, without any coercive measures, will retrace its steps as to charging this burden upon the two towns, and take the proper measures for repairing the bridge at the expense of the county. If, however, they should not do so, there will be a remedy; but whether by mandamus, or by indictment against the county, we need not now consider.
This is a very proper case for exercising the discretion which has been vested in us of denying costs.
Judgment for defendants but without costs.